Morel-Marco, is that correct? That's correct, Your Honor. How are you, sir? Good, Your Honors. May it please the Court to learn Morel-Marco on behalf of the United States. I'd like to reserve four minutes for rebuttal. Sure. Thank you. A specific question before the Court today is whether a New Jersey conviction for intentionally, knowingly, or recklessly assaulting a police officer resulting in bodily injury is a crime of violence under the Elements Clause of the Sentencing Guidelines. Let me just start with the obvious. The District Court made it clear that he felt bound by a tarot. Aren't we in the same position? And not only a tarot, but Chapman? Actually, I think Chapman cuts in our favor, but I'd point out to this Court that four out of the five circuits that have considered this issue have, in fact, reconsidered without going en banc their prior decisions and have held that Voisin, well, four of the five have held that Voisin, in fact, overrules pre-existing precedent in their circuit. They did not go en banc to do that. Our position is that this Court should apply the reasoning of the Supreme Court in Voisin, which turned on, of course, the meaning of the term, the common meaning of the term, use of force. But didn't Voisin, the Voisin Court, didn't really candidate this decision with footnote four? So to some extent, that's what the First Circuit in Bennett, as well as the more recent decision in the Sixth Circuit, are focusing on that against clause. The government's position is that for this Court to not apply Voisin's reasoning in other contexts, it needs a reason. And the reason that the First Circuit put forward to distinguish what it held, what the term means, use of force, was that there's this distinction of the against clause, which appears in the guideline but does not appear, arguably, in Voisin. Voisin, of course, is a crime of domestic violence, so they're always committed against someone in a particular relationship to the perpetrator of the crime. There's always a victim. It's always a one-on-one. What about Harper? You cited Harper to us. Did it help you or hurt you? Well, I mean, it actually helps in this specific case. It doesn't necessarily help in all future cases. Harper focused, as Bennett did, on the against someone else. What's interesting and important about the New Jersey statute at issue here is that, in fact, you have to have a knowing mens rea as to the law enforcement person. You can still do it recklessly. You can recklessly use force, but you have to know that it's the law enforcement officer in the performance of his duties. So that's the hook that the First Circuit and this dissenting panel in the Sixth Circuit are using to say, oh, don't apply Voisin, because you could have an instance where the mens rea for the use of force part, the object of the crime, might be reckless, and that's not what the Supreme Court was talking about. Well, Mr. Morimarco, you said that in your letter on Harper. Help me. Help me how you transpose only knowingly to the assault on a law enforcement officer. Well, I was citing specifically to the jury instructions, the model jury instructions in the state of New Jersey, which are in the appendix, I guess, at 96 and following. And we're back in the business. We don't look at the categorical approach doesn't direct us to jury instructions. Categorical approach directs us. But that's what the elements of the crime are. I mean, the elements of the crime, the jury is instructed that they have to find a knowing mens rea. They don't have a choice there. That's all well and good, but we don't look at jury instructions when we take the categorical approach to look at the statute. We look at the statute. Well, you have to interpret the statute as to... We look at the statute first. We look at the statute. Sure. And I just question whether... I'm not saying what this does to your argument. I just question how you transfer knowingly from subsection A1 to subsection A5, but you don't transfer recklessly. Well, I think what's interesting is what's going on then in the First Circuit, because the First Circuit in the Bennett case, as well as the Sixth Circuit panel that we're talking about, are trying to take statutes that I think are reasonably clear on their face. I take it your point is that the statute itself says knowingly, recklessly, or intentionally. Yeah. I guess I was surprised by your reaction that under the categorical approach... In the categorical approach, you don't look at the facts of the case. The facts of the case are very different from what the elements of the crime are, and we know what the elements of the crime are by looking at definitive case law in the... Yeah, okay. You can argue that. Yeah. All right. I'm not totally disagreeing. Okay. Well, our position is that one of the authoritative pieces of law that you can look at are model jury instructions, because that tells you how the state court interprets their statute. So you would never have a case where, in fact, an assault on a police officer that becomes aggravated because it's an assault on a police officer could be done recklessly as to knowledge of who it's against. You have to know that. That's required. You can still be reckless in driving into, which is what happened here. When you're plowing into an officer trying to evade a crime, you can be reckless as to whether or not there will actually be an injury. You don't have to actually intend it. That's a typical model penal code way of defining these crimes, and I think that's really what's important here. Looking at the intent of Congress and how virtually all criminal law is written these days, the intent of Congress here was pretty clear that they wanted to include assault. In fact, the legislative history says simple assault and simple battery would fall within the elements clause that they passed in regard to the uncareer criminal statute. Now, Voisin dealt with a specific domestic violence statute. Absolutely. In fact, much of the argument in Voisin's majority opinion goes to the fact that Congress had to have known that 35 states had laws like this that included reckless elements. Is that different here? No, actually that's exactly what's going on here. Why is it? Because assault is, as Justice Alito reminded us when he was still a judge on the Third Circuit, is the quintessential crime of violence. It boggles the mind to think that what Congress wanted to do, what it in fact wanted to do, which was to assure that violent career criminals would receive significant sentences, that assault convictions would not be within that. If we look at how it was originally structured in the guidelines, it was sort of a three-step process. And problem one, the elements clause was meant to cover those quintessential crimes like rape, homicide, assault, and battery. Part two were actually property crimes in which there was a significant risk that there would be bodily damage. So it was things like use of explosives, arson, burglary. Congress was concerned that those might lead to violence, so it wanted to include those too. And then it had a catch-all that said any other crime in which there's a significant possibility of harm. And I'm getting the phrasing wrong, but that's essentially what the residual clause is. We've lost the residual clause. But part one, which is the part we're talking about, was meant to be just this type of crime. What about Justice Thomas' dissent in voicing his concern about reckless driving? Well, should we be concerned about that, Bob? A dissent is a dissent, obviously. A dissent is a dissent, yeah. To the extent that the cases have put a limiting principle here, it always seems to revolve around the DWI scenario. And I do think that that's a scenario that gives the court some pause. But I don't see how that's implicated in this particular case, Your Honors. Again, you could have a reckless or a DWI that leads to an assault on a police officer. It just wouldn't be charged that way. Again, because you have to be assaulting a police officer. If you just sort of accidentally drove into a police officer, that would not meet the criteria under the future exception. What if the police officer was injured? Sure. This was an intentional battery. Again, we don't look at the facts of the case. But in the typical case in which there's an assault on a police officer, typically it arises in eluding cases and somebody either intentionally rams a car or is trying to get away. What if you're driving down the road and you're in a hurry to get somewhere and there's one lane and there's sort of an outside lane, the berm, and you've seen intersections where people might go around the berm. You come down, you're impatient, you don't want to wait for that car to make a left-hand turn. You go around that corner on the berm, you're going too fast, and you come around through the intersection and you go back right into a police car. Accidents are not covered under the statute, Your Honor. In fact, Judge Greenberg... You're going too fast, you went out on the berm, you hit the police car. That's not... That's reckless. It could be reckless. It could not be reckless driving. That's what Justice Thomas was concerned about. Right, but again, under the New Jersey statute, as it seems to be interpreted, you would have to knowingly have gone after the officer. Recklessness is not enough. In fact, under New Jersey law, mere negligence is not enough. I see that my time is up. I'm certainly happy to answer more questions, and I know I had some time in the bottle. Judge Greenberg, any questions? I just want to ask counsel, what did he think about the Sixth Circuit according to kind of the two panels took different positions? That's a little surprising. I don't see that much in the... But I have a question in the Sixth Circuit, who won first? Yes, and our position is that the original panel got it right, but our position also is that even if the second panel got it right, it doesn't impact this particular New Jersey statute. So, again, there's the broad argument and the narrow argument. I'm not asking this court necessarily to hold that all assault cases fall within the reasoning of Voisin, but certainly both Bennett and this new Sixth Circuit panel decision are taking one little portion of Voisin and suggesting that maybe Voisin, even though it applied to the use of force, may not be controlling because there's a possibility that if they considered how this force impacted someone else, they'd say, well, that mens rea has to be greater. And our position is that, in fact, that's New Jersey law and that you can look to authoritative sources of New Jersey law to make that determination. You know, it's funny. When I read Voisin, that's at least in cases on those facts, it's binding on us. I had the feeling that the court was sort of a little hesitant about it, about the resolve of this case. Yeah, I know. I mean, what's interesting, too, is that we had five decisions in the course of appeals. Two of them are guidelines cases. Three of them are active cases. The two guidelines cases both go for the government. There is a little bit of a reluctance in the ACCA context, I think, to overextend. I don't think that sentiment necessarily goes to the guidelines context where, again, Beckles, I think, gives you a little bit of a hint of that, that we're not going to extend everything that in an ACCA context where you're going to get a 15-year mandatory minimum and you're going to change the statutory maximum. The guidelines are advisory. They're important, obviously. They have an impact on the sentence. But the court is not going to be as stringent in applying that. And you also see how in Voisin and Castleman, the court considered rule of lenity and didn't adopt it. So on that, I'll rest until after. Thank you. Thank you. Good afternoon, Your Honors. Good afternoon. I'm going to introduce the court. Lorraine Goley-Rufo on behalf of the appellee, Exondro Santiago. Your Honor, first of all, as a procedural matter, this issue that the government is just raising with the New Jersey statute where it's not dealing with the mens rea of the statute but the backside of the statute is something that the government did not raise in its initial brief, and we responded to their letter recently just saying that it was not only procedural part, but we think it is substantially wrong as well, which I will get to. As a general matter, Your Honor, the statute at issue, the New Jersey statute at issue under the precedent of this court doesn't meet the criteria for a crime of violence under 2K2.1. And that's until the Supreme Court overrules it or until this court in the non-bond process determines that it is. And what has happened here? You know, all the Supreme Court did in Boise, Your Honors, it took a specific statute, 922G9, and it expanded the definition of the use of physical force in that particular statute to include reckless conduct. But physical force, which the government just raises over, is critical in that case because Boise specifically noted that its decision was limited to the 922G context, and it did not overrule this circuit's ten-decade precedent of crime of violence. Aren't you taking some liberty with that statement? Didn't the Supreme Court say this doesn't apply to the INA? Didn't it specifically say if we're looking at the INA, we might view this differently? Well, what I know the Supreme Court did say in footnote 4, Your Honor, is that it said in a different context, you know, we're limiting Castleman to this domestic violence issue. And if we look beyond, we're going to look at Congress's intent here. And they clearly looked at Congress's intent in 922G9 there. And they said this is dealing with domestic violence offenses, domestic violence offenses and keeping the guns out of the hands of those offenders who even misdemeanor crimes. So it didn't specifically note that. And it basically said we're not expanding it to Section 16A or the recidivist statutes. And I think that we have to look in the context of what it was and how it said three-quarters of the states who had this recklessness as a mens rea for their assault statutes, because it basically would effectively make the 922G9 inoperative to 35 states or three-quarters of the states. So it was looking at that very narrow context in deciding that recklessness in that context should satisfy that statute. But that's an extremely stark contrast to the ACCA and the recidivist guidelines that we have. They serve a very narrow function. And this court noted in Chapman, Congress's goal in creating the career offender guidelines was to get substantial prison sentences to repeat violent offenders. So the sentencing enhancements, they have grave, grave consequences at times. They increase punishment sometimes dramatically for our clients. They're really geared towards these incorrigible recidivists. And because of that, the definition of the statute, it has a very narrow and highly punitive aim. So the court has limited its application to knowing and intentional offenses. Until they got the voisine. What's that? Until they arrived at voisine. Until they arrived at voisine. But again, Your Honor, I believe that voisine was in a limited context and left the ability for courts and for even itself to determine that it's in this limited understanding, the Castleman, the voisine limited application of the 922G9. I would acknowledge that if we accept your proposition here that we'll be in the minority of circuits post-voisine. I do, Your Honor, but I do think that we... Not that that makes your position wrong. I think we can distinguish a couple of the circuits' decisions in certain ways. First of all, we have precedent in this circuit. And the 5th Circuit and the 8th Circuit, when they decided to go with voisine's broad reading, didn't have that issue. Then we have the 10th Circuit, which it dodged the stare of decisive issues by claiming that its law was going to limit the use of physical force to knowing and intentional conduct applied to the guidelines only, not the ACCA. Then we have the very crazy case in the 6th Circuit, obviously, where we have Verweijde saying that following voisine... But I have to say, it's not a strong case for a variety of reasons, and I would urge you not to follow it because of these certain reasons. First of all, it doesn't even acknowledge footnote 4 on voisine. It does not deal with all the statutory context that is evidenced by the Supreme Court's decision in Curtis Johnson and Kesselman. And it ignores the grievous ambiguity that the Supreme Court's decision has created. And Beckles hit that right on the nail when he said, we conclude that the text and purpose of ACCA leave us with a grievous ambiguity. That's what they're saying. And in fact, then they have another panel, Harper, come up, and of course, now Harper has to follow it. Because that's precedent, and they have to follow Verweijde, but they do it giving the Verweijde court a harsh spanking for taking voisine to the extreme that they did. So in my context, I think we can... This is a circuit where for a decade we have held in the ACCA context and in the sentencing enhancements when we're dealing with recidivist offenders, that knowing an intentional conduct is mandated. That recklessness is simply not enough. And to hold that voisine and Kesselman, which were dealing with those very limited situations of domestic violence and keeping the hands out of people who have been convicted of domestic violence misuse, which is right in the statute itself, should not be read so broad to undo what Kesselman says in his footnotes. All of the circuits, all of the circuits until voisine was decided, who have said that knowing intentional conduct was necessary. My position is that it should not be read that way. Not only that, in different situations, for example, in the ACCA when we look at Curtis Johnson and we look at Kesselman, there the court took the same definitional language, the same definitional language it took, use of physical force, and it applied different meanings. Different meanings were applied there. So, for example, force for 922G9 is defined broadly. It includes all common law forces. In fact, I think Kesselman was the court that said it would almost be comical to put common law force in the context of the ACCA, to say that a common law force, which is okay for domestic violence violations, like a slap or a pull of the hair, is actually okay to increase someone's sentencing, sometimes threefold, fourfold, skipping a life sentence for that typical mens rea. So, I mean, I think they're reading statutes differently. In that particular case, it was the force clause. The court adopted in Curtis Johnson, the court said that you need violent force, violent force to give someone that extreme penalty of increasing their exposure, their penalty under the law. Again, the court adopted those different definitions because the statute's different context and purposes, and that's just what the Vualzine Court says in Note 4. Otherwise, you do get into the situation where Justice Thomas says where texting and you injure someone, that can constitute an enhancement under our guidelines for such conduct. It just doesn't, it's almost like Passamon, where they say it's a comical, it could be a comical set of scenarios if you start increasing everyone's sentences for reckless conduct. The other issue, Your Honors, is, you know, at most, at most what Vualzine did, it interjected uncertainty into whether the use of physical force in the recidivist guidelines includes reckless conduct. So, where are our two competing definitions? Neither of which is clearly correct. This court is required to apply the rule of lenity and narrowly construe the guideline. Here, it would be in Santiago's favor. This is not the case, such as was in Vualzine, where the meaning of 922G9 was clear. The Supreme Court said that in footnotes 6 of the case in Vualzine. On the contrary, all that's clear here is that the meaning of 4B1.2 is ambiguous. The court has, for more than a decade, limited it to knowing and intentional conduct, and even the Supreme Court has refused to answer. Does its logic of 922G9 extend to other areas? It refused to answer that. So, this is precisely the kind of indeterminacy for which the rule of lenity is appropriate, and for which Beckles came in, and the First Circuit, and Beckles, and also in another case decided in the First Circuit as well. And whereas the rule of lenity, it not only takes into account the notice requirement, but it also, it's the proper balance between Congress, the prosecutors, and the courts. And even the Supreme Court in Leocow, that noted that, you know, it would have been constrained to interpret any ambiguity in the statute in a defendant's favor, and that's what we are asking you to do here. If it is, in fact, an ambiguity, if the precedent of this court doesn't demand that a crime of violence or a violent felony continue to have a knowing and an intentional mens rea, then we would ask your honors to consider the rule of lenity and affirm, just ignore his decision based on that ground. We may have, as a court, misinterpreted Leocow when we decided, I believe that's how it's pronounced, that we said that accidental would seem to include recklessness. I'm sorry, I'm not sure what the question is. In Oya Bangee, you talked about Third Circuit precedent. Oya Bangee interpreted the Supreme Court's decision in Leocow. And in Oya Bangee, we said that an accidental act would seem to include recklessness because Leocow said an accidental act would not apply, okay? It would not be a violent crime. And then Otero was built on top of Oya Bangee. And what I'm asking you is, didn't we, at least as to those foundational cases, misinterpret what the Supreme Court said in Leocow? I don't necessarily think so, your honor. I think that in Otero and similarly in Oya Bangee, that this court basically held that the use of force is recklessness is insufficient. As this court held in Otero, a crime of violence excludes unintentional and unknowing offenses because the concept of use of physical force requires active employment, naturally suggests a higher degree of intent than negligent or merely accidental conduct. Again, while clearly getting rid of the negligence, and still suggesting that it requires some degree higher, some kind of purposeful action. So I would say that Otero got it right. And I would ask this court to follow its precedent in that knowing and intentional crimes are the ment re that is required at a minimum to find someone, to expose someone to this great increase in punishment. And again, it looks like my time is running out, but just to conclude, Bennett said the grievous ambiguity that the ACCA leaves in light of Wazin. We have the exact same situation here. Santiago's prior conviction under New Jersey law, it has as a possible mens re a recklessness. So we are asking that this court follow its precedent, consider the rule of lenity, look at Wazin's limitations and footnote four, as well as the policy and the context behind the recidivist enhancements, which are here to severely punish people who commit violent crimes again and again, and find that in this particular case, 2K2.1, which we're dealing with, that New Jersey statute does not fit within that definition. Thank you. Judge Greenberg, anything else? No, I don't have anything else. Thank you very much. Thank you. I want to pick up where I think Judge Fischer was asking some very important questions about where this court went wrong, and frankly, where every court went wrong. We weren't the only one. Yeah, everybody misinterpreted Leo Cal, and it started in Oibongi. And so the foundation here really is incorrect, and Wazin specifically said that. And now we know that reckless is on the other side of the mens rea equation, so that if it's accidental, that's not a crime of violence. But if it's reckless, and the court stressed, and it's precisely the same situation. Wazin was an assault case. They were interpreting state domestic assault statutes, and what they said was it is inconceivable that Congress didn't mean, because two-thirds of the states adopted the model penal code, which is what we have here in New Jersey, where reckless crimes are generally sufficient for criminal liability. But wasn't the purpose of the statute the court was considering wasn't very different than the purpose of the enhancements under the career offender guidelines? That specific statute obviously served a specific purpose, which is to keep guns out of the hands of violent offenders. And recognizing that many of the qualifying offenses wouldn't be captured. But that's exactly the case here. Because assaults under this definition, because assaults throughout the United States, in two-thirds of the states, have recklessness as a possible mens rea. So how do you reconcile that with Chapman? You said it helped you, but I read Chapman to make it clear. Chapman says the intentional employment of force, generally to obtain some of that intentional employment of force. Well, Chapman was decided... It was post-Voziner. Excuse me? It was after Voziner. Sure. It was a question of whether or not Castleman would apply. And it applied Castleman there. And it didn't want to use the more narrow definition of the use of force. As I recall, I thought Chapman was a generic assault case rather than the... But there is language there that makes it clear that specific intent is required. Excuse me a second, Your Honor. The word used means the intentional employment of force. Okay. So it's a male and feminine communication. It's a crime of violence under the guidelines. Right. No more intentional assault is a crime of violence for misdemeanor crime of domestic violence. It left open the question of recklessness. It didn't read it. It specifically said that recklessness is an open question. And that question was answered in Voziner. But in its language, it said that specific intent was required. I'm missing something on Chapman. I'm going to ask the court if I can submit a supplemental letter because I actually thought that Chapman was found that there was a crime of violence under the guidelines and didn't reach the question of whether or not recklessness applied. It didn't say that an unintentional assault was a crime of violence. It didn't need to reach the Voziner issue because recklessness wasn't a part of that statute as I understood it. So that issue would not have arisen in Chapman. I guess my question is doesn't Chapman reaffirm the proposition? It bears discussing the meaning of use in physical force. The word use means the intentional employment of force. Well, I assume the Voziner argument wasn't raised in that case because it wasn't implicated in that case, Sean. Okay. Fair enough. So I guess what was important about Chapman is that Judge Jordan's concurring opinion said we shouldn't ignore the purpose of these statutes. And, again, the same way Voziner was concerned that it would be rendered broadly inapplicable in two-thirds of the states, I think is the exact same situation that we would have here. Assault, which was clearly intended to be a crime of violence, would not be a crime of violence in two-thirds of the state. And so the congressional objective, again, you go to the legislative history, the Senate report said simple assault and battery were intended to be covered under the elements clause. They don't use the term elements clause. But that portion of the statute is something that they intended. And I do want to just correct, I think, a mistake of opposing counsel. All four circuits that, in fact, applied Voziner in this context had preexisting authority to the contrary. In fact, it was the authority throughout the United States. Again, the misapplication of legal in those contexts. So Congress's intent, obviously, is very important here. And Chapman did not reach the specific issue. It's my belief, and I believe it wasn't presented in that case. Judge Greenberg, anything else? No, I have nothing. Thanks a lot. Thank you. Thank you, counsel, for your briefs and your argument, and we will take this matter into consideration.